627 So.2d 1366 (1993)
Antoine A. CHARLES
v.
The TRAVELERS INSURANCE CO., et al.
No. 93-C-0900.
Supreme Court of Louisiana.
November 29, 1993.
*1367 Louis D. Bufkin, McHale, Bufkin & Dees, Lake Charles, for applicant.
Jere J. Bice, Lake Charles, for respondent.
KIMBALL, Justice.[*]

THE ISSUE
The issue squarely presented in this case is whether La.Rev.Stat. 23:1021(7)(e), which places a strict burden of proof on a claimant seeking worker's compensation for a "heart-related or perivascular injury," applies to a *1368 claimant who is seeking compensation for a cerebrovascular accident (a stroke) which occurred while the plaintiff was working.
THE STATUTE
La.R.S. 23:1021(7)(e)[1] provides:

Heart-related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.[2]

THE FACTS
On June 25, 1990, plaintiff Antoine A. Charles, an employee of R.E. Heidt Construction, felt fine when he arrived at work in the early morning to assist in installing a new parking lot. Plaintiff's duties mainly included raking the asphalt and smoothing it into place, although he also assisted in shovelling the asphalt from the delivery trucks.
At approximately 9:00 a.m., plaintiff began to experience severe headaches, and his speech became slurred. At approximately 10:30 a.m., plaintiff's son visited his father at the work site and noticed his condition. The son advised the plaintiff to go to the doctor, but the plaintiff refused, denying there was anything wrong with him. Plaintiff's supervisor inquired as to whether plaintiff was feeling bad and told plaintiff to sit down for a while if he began to feel worse.[3]
When plaintiff arrived home at the end of the work day, his wife insisted he go to the hospital. Upon admission at Lake Charles Memorial Hospital, plaintiff was diagnosed with "acute hypertensive encephalopathy," or swelling and irritation of the brain due to hypertension. Over the next few days, plaintiff's condition worsened. Plaintiff's diagnosis upon release several days later was a "completed cerebrovascular accident secondary to hypertension," or a stroke. The stroke commenced while plaintiff was working, but did not conclude until several days later.
Plaintiff requested workers' compensation benefits from his employer. R.E. Heidt's workers' compensation insurer, Travelers, refused to pay on the basis the claim was not compensable under La.R.S. 23:1021(7)(e). Plaintiff filed a claim for temporary total disability benefits with the Office of Workers' Compensation. The hearing officer found that plaintiff's cerebrovascular accident or stroke was a "perivascular injury" included under La.R.S. 23:1021(7)(e), and that plaintiff failed to carry his burden of proof under the statute.[4]
*1369 Plaintiff appealed to the third circuit court of appeal. The appellate court held (1) that La.R.S. 23:1021(7)(e) applied to plaintiff's stroke, and (2) that plaintiff failed to meet his burden of proof thereunder because his treating physician concluded the ultimate cause of the stroke was hypertension, and because plaintiff admitted the work he was doing on the day of the accident was no different from that done by his co-employees.
Plaintiff's application to this court for a writ of certiorari was granted.[5]

ANALYSIS OF THE LAW
La.R.S. 23:1021(7)(e) and Strokes
We hold today that an employee who has experienced a cerebrovascular accident, or stroke, has suffered a "perivascular injury" as used in La.R.S. 23:1021(7)(e). We arrive at this conclusion by analyzing the apparent intent of the legislature based on the status of the law at the time of the enactment. Although the definition of "perivascular" may not be precise or its meaning immediately discernable, what is obvious in the statute is that the legislature, by the use of the term "heart-related," clearly intended that myocardial infarctions, or heart attacks, be placed under the scope of 23:1021(7)(e). Inasmuch as this court and the courts of appeal have historically applied the same analysis to heart attacks and to strokes when determining whether the two injuries "arise out of" the claimant's employment under La. R.S. 23:1031, the inquiry thus becomes whether the legislature intended the increased burden of proof required under the statute to apply not only to heart attacks but also to strokes.[6]
In Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982), this court was faced with determining whether an employee's heart attack, which occurred while the employee was at work, arose out of his employment. After noting the heart attack was an injury by accident occurring in the course of the claimant's employment, the court turned to whether or not the heart attack arose out of his employment under La.R.S. 23:1031.[7]
In its review of the pertinent jurisprudence relating to whether a heart attack arises out of employment, the court included several cases which involved cerebrovascular accidents, specifically, Ferguson v. HDE, Inc., 270 So.2d 867 (La.1972) and Leleux v. Lumbermen's Mutual Insurance Co., 318 So.2d 15 (La.1975). Although those two cases involved claimants who had suffered strokes, the Guidry court cited their holdings, particularly Ferguson's, as applying also to heart attack claimants.[8]
This court then formulated a test for determining when a heart attack arises out of employment. We held the plaintiff must prove by a preponderance of the evidence that the physical stress, strain or exertion "in reasonable probability contributed in some degree to the heart accident."[9] If the plaintiff *1370 has preexisting heart disease, then he must also prove the employment exertion, stress or strain is of a degree greater than that involved in the everyday non-employment life of the average non-worker.[10]
In Reid v. Gamb, Inc., 509 So.2d 995 (La. 1987), the court addressed the issue of "whether the Guidry formula for proof of a causal link between job and accident, which was adopted in a heart attack case involving physical stress, should also apply in a cerebral vascular accident case." The court held the Guidry test should also be applied in cerebral vascular accident cases. The Reid court also held that contrary to its previous disparate treatment of physical exertion and mental exertion,[11] it would no longer distinguish between whether the employment stress was physical, mental or emotional. Additionally, the court rejected the requirement that the stress be "extraordinary" as previously required under McDonald and Ferguson for heart attacks and strokes resulting from mental or emotional work stress.[12]
Because it is clear that by the use of the term "heart-related", the legislature obviously intended, in enacting La.R.S. 23:1021(7)(e), to overrule this court's pronouncements on the determination of whether a heart attack arises out of employment, and because this court used that same analysis in stroke cases, we believe the legislature, by the use of the word "perivascular," also intended to overrule the jurisprudence applying that same analysis in stroke cases.
That La.R.S. 23:1021(7)(e) intended to legislatively overrule not only Guidry and Carruthers but also Reid is made even more apparent when one focuses on the new statute. La.R.S. 1021(7)(e) now requires that for a "heart-related" or "perivascular" injury to be compensable at all under the Act, the plaintiff must:
(1) demonstrate by clear and convincing evidence,
(2) that his physical work stress was extraordinary and unusual in comparison to the stress experienced by the average employee in that occupation, and
(3) that his physical work stress, and not another source of stress or a preexisting condition, was the predominant and major cause of the illness or death.
It was the Reid opinion, and not the Guidry or Carruthers opinions, which held (1) that it was no longer relevant whether the stress was physical, emotional or mental, and (2) that the stress need not be extraordinary. Therefore, it is clear the new statute was directed specifically to two of the precepts formulated in Reid, a stroke case.
"Perivascular" is defined in various medical sources as "situated around a blood vessel." See, e.g., Dorland's Illustrated Medical Dictionary 1133 (24 ed. 1965); Medical Dictionary for Lawyers 558 (3d ed. 1960); and Schmidt's Attorneys' Dictionary of Medicine P-136 (1990). As noted in Reid, a stroke is caused by some interference with the blood supply to the brain. This interference can be caused by a ruptured blood vessel in the brain, resulting in a hemorrhage or aneurysm, or by a blockage of a vessel, caused by an embolism (blockage caused by a blood clot or other particle) or a vasospasm (spasm of a blood vessel).
The legislature's choice of the word "perivascular" rather than "cerebral vascular" or "cerebrovascular" appears to have as its basis the medical fact that embolisms and aneurysms *1371 do not only occur in the cerebral area but may also occur in virtually any blood vessel throughout the entire body. For example, aneurysms can be abdominal, aortic, axillary (in the axillary vein in the arm), thoracic (in the chest), or crisp's (in the splenic artery). Likewise, embolisms can be spinal, lymph, pulmonary or retinal.[13] Several courts of appeal had treated these types of vascular injuries the same as strokes and heart attacks, and applied the heart attack and stroke/cerebrovascular accident jurisprudence to determine whether the injury arose from employment.[14] Thus, the choice of the term "perivascular" appears to have been intended to be directed at those cases as well.
Had the legislature employed the term "cerebrovascular" instead of "perivascular," the absurd result would have been that while Guidry and Reid would have been legislatively overruled, the court of appeal cases applying Reid and Guidry to vascular accidents (embolisms and aneurysms) occurring in non-cerebral areas of the body would not have been. The even more absurd result would have been that employees who suffered a cerebrovascular accident due to an embolism or aneurysm would have the high burden of proof found in La.R.S. 23:1021(7)(e), while those employees who suffered an embolism or aneurysm in a non-cerebral area would only have to meet the Reid test of proving their physical or emotional employment stress was greater than their non-employment stress.[15]

Application of La.R.S. 23:1021(7)(e) to This Case[16]
Having determined the legislature, by its use of the word "perivascular", intended to place claimants who suffered strokes while at work within the purview of La.R.S. 23:1021(7)(e), we must now determine whether plaintiff has met his burden of proof under that statute. In order for his stroke to be considered a personal injury by accident arising out of and in the course of employment, plaintiff must prove by clear and convincing evidence that: (1) his physical work stress was extraordinary and unusual in comparison to the physical work stress experienced by the average employee in that occupation, and (2) that the physical work stress and not some other source of stress or a preexisting condition was the predominant and major cause of the stroke.
The hearing officer, referring to Dr. Paul Comeaux's deposition, found plaintiff did not prove by clear and convincing evidence that his physical work stress and not a preexisting condition caused the stroke. Furthermore, the hearing officer also found that plaintiff made no showing that at the time of the accident his physical work stress *1372 was extraordinary in comparison to the other workers doing the same job. The findings of fact of a hearing officer are subject to the manifestly erroneous standard of review. See, e.g., White v. La. Public Service Commission, 259 La. 363, 250 So.2d 368 (1971) and Virgil v. American Guarantee and Liability Insurance Co., 507 So.2d 825 (La.1987). Thus, "a reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous." Rosell v. Esco, 549 So.2d 840, 844-45 (La.1989).
Dr. Comeaux, plaintiff's routine physician and his physician at the hospital, described the cause of plaintiff's stroke: "It is my impression that the cerebrovascular accident on June 25, 1990, was not caused by his employment as a construction worker, but his untreated hypertension may have been aggravated by it." The doctor also stated that in his opinion the "stroke was primarily caused by severe hypertension," but that the exertion at work "could have been a precipitating factor." Clearly, the doctor concluded that plaintiff's preexisting hypertension and not plaintiff's physical work exertion was the "predominant and major cause" of plaintiff's stroke. Although this finding alone is sufficient for us to find that plaintiff failed to meet his burden of proof, we also note plaintiff admitted at trial that on the morning of the accident the work he was doing was no different from the work being performed by his co-workers.
Our review of the record reveals the hearing officer's factual findings were indeed reasonable based on the evidence, and therefore, not clearly wrong. Consequently, we hold plaintiff failed to meet his burden of proof under La.R.S. 23:1021(7)(e).[17]

CONCLUSION
For the foregoing reasons, the judgment of the court of appeal, 615 So.2d 20, affirming the judgment of the hearing officer and denying plaintiff's claims for workers' compensation benefits, is affirmed.
AFFIRMED.
MARCUS, J., concurs and assign reasons.
DENNIS, J., dissents with reasons.
WATSON, J., dissents with reasons and also agrees with the dissent by DENNIS, J.
MARCUS, Justice (concurring).
I agree with the majority's holding that La.R.S. 23:1021(7)(e) applies to a plaintiff seeking compensation for a stroke. However, I disagree with the suggestion in a footnote to the majority opinion that a plaintiff who fails to meet his burden of proof under La.R.S. 23:1021(7)(e) may have an action in tort. La.R.S. 23:1032(A)(1)(a) makes worker's compensation the exclusive remedy for injury, sickness or disease for which the worker is "entitled to compensation" under the terms of the Act. Clearly, an injured worker is still entitled to compensation for heart-related or perivascular injuries under La.R.S. 23:1021(7)(e); the statute simply sets forth the burden he must meet to recover. The mere fact that the worker cannot recover under this statute does not mean he was not entitled to compensation, it only means that he failed to make a sufficient showing to recover under the statute. I believe the legislature is free to set the burden of proof an injured worker must meet in order to recover. In doing so, the legislature has not altered the essential feature of the worker's compensation scheme (i.e., that the worker can recover without proving fault); it has only delineated the factual proof the worker must establish to recover.
For these reasons, I believe worker's compensation remains the exclusive remedy for all heart-related or perivascular injuries. Accordingly, I respectfully concur in the majority's opinion.
*1373 DENNIS, Justice (dissenting).
Article I, § 3 of the 1974 Louisiana Constitution commands the courts to refuse to enforce a legislative classification of individuals on the basis of physical condition unless the state or other advocate shows that the classification has a reasonable basis. Sibley v. Bd. of Sup's of Louisiana State U., 477 So.2d 1094, 1107 (La.1985). La.R.S. 23:1021(7)(e) on its face imposes a more stringent burden of proof on different classes of persons according to their physical condition. The statute creates two classes: 1) a class of workers compensation plaintiffs that have suffered heart-related or perivascular injury, illness, or death; and 2) a class of workers compensations plaintiffs that have not suffered heart-related or perivascular injury. Victims in the former class are required to prove by clear and convincing evidence that the work stress was extraordinary and unusual, and that this work stress and not some other source of stress or preexisting condition was the predominant and major cause of the injury. Those in the latter class must only show that their injury arose out of and in the course of employment.
I respectfully dissent from the majority's enforcement of this statute and would remand the case to the trial court with instructions to determine whether the statute is constitutional after affording the state or a proponent of the legislation an opportunity to present evidence and arguments on the equal protection issue.
WATSON, Justice, dissenting.
I respectfully dissent from the majority's interpretation of the term "heart-related or perivascular injury". Heart-related has a reasonably clear meaning. A coronary occlusion, coronary thrombosis, myocardial infarction, advanced coronary insufficiency and other common heart ailments are heart related. However, heart disease and blood vessel disease are not synonymous. A stroke is a cerebrovascular accident. It is not heart related.
Perivascular means surrounding a blood vessel. The majority concedes that the term's meaning is not "immediately discernible". Since the word does not have a precise definition, the majority errs in concluding that it embraces strokes.
This Court considered a cerebral vascular/stroke case in Reid v. Gamb, Inc., 509 So.2d 995 (La.1987). Reid was decided two years before the 1989 amendment which introduced a clear and convincing standard for heart-related or perivascular injuries. The majority states that the statutory language "was directed specifically to two of the precepts formulated in Reid, a stroke case." If that is correct, why didn't the legislature use specific language? If the legislation were directed at cerebral accidents, strokes, the legislature should have so stated. Repeal of the prior law should not be implied by this Court. Gulf Oil Corporation v. State Mineral Board, 317 So.2d 576 (La.1975).
I respectfully dissent.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3 of the Rules of the Supreme Court of Louisiana, Lemmon, J., was not on the panel which heard and decided this case. See the footnote in State v. Barras, 615 So.2d 285, 286 n. 1 (La.1993).
[1] Acts 1989, No. 454, § 1, effective January 1, 1990.
[2] The only other Louisiana statute with the word "perivascular" in it is La.R.S. 23:1031.1 which deals with coverage under the Act for occupational disease. "[H]eart-related or perivascular disease" is specifically excluded from the classification of occupational disease under that section. There are no cases by any Louisiana court which define "perivascular" as used under Section 1031.1.

Only two other states have statutes with the word "perivascular" in them, Arizona, A.R.S. § 23-901 and § 23-1043.01, and Oklahoma, 85 Okl.St. § 3. Both of these statutes are found in the workers' compensation acts of the two states and both place varying burdens of proof on plaintiffs for proving that a heart-related or perivascular injury falls under the scope of the respective acts. There are no Oklahoma court cases which have addressed whether "perivascular" includes a stroke. In Arizona, there is only one case, at the appellate court level, which implicitly addressed the matter when it automatically applied the "perivascular" statute, A.R.S. § 23-901, to a stroke victim's claim without his opposition. Deschaaf v. Indus. Com'n of Arizona, 141 Ariz. 318, 686 P.2d 1288 (App.1984).
[3] Trial transcript, p. 16.
[4] Specifically addressing the burden of proof, the hearing officer stated:

"[Claimant] did not show by clear and convincing evidence that the physical stress at work and not some other pre-existing condition caused the stroke. See Dr. Paul Comeaux's deposition. Furthermore, Claimant made no showing that at the time of the accident his physical work stress was extraordinary in comparison to that experienced by another worker doing the same job somewhere else."
[5] Charles v. Travelers Ins. Co., 617 So.2d 1176 (La.1993).
[6] Not only did this court and the lower courts use the same analysis in addressing whether strokes and heart attacks were compensable, but the opinions interchangeably cite each other, without regard for whether the injuries involved therein are heart attacks or strokes.
[7] The Guidry court explained that "[a]rising out of employment contemplates the accident's being the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed." 418 So.2d at 628.
[8] That this court treated strokes and heart attacks similarly even prior to Guidry is seen in Ferguson, 270 So.2d at 870 (emphasis added), where this court stated, when discussing the difference between physical and mental stress:

"When the events are clearly job-connected, there seems to be no reason to sustain a claim for a heart attack or a stroke caused by some ordinary physical exertion and to reject a claim caused by extraordinary mental or emotional exertion."
[9] The Guidry court noted the standard for heart attack compensation cases involving mental or emotional stress was enunciated in McDonald v. International Paper Co., 406 So.2d 582 (La.1981) and in Ferguson (again citing a stroke case as applicable to heart attack cases). Under McDonald, a plaintiff who could prove his work-related mental or emotional stress was extraordinary or greater than that of everyday life could recover compensation benefits provided he could also prove the stress was the cause of his heart attack.
[10] The Guidry test was subsequently modified in Carruthers v. PPG Industries, Inc., 551 So.2d 1282 (La.1989), where this court held the proper "test of causal relationship" should be a subjective comparison between the employee's physical work exertion, stress, or strain and that employee's (rather than the average person's) non-employment lifestyle.
[11] See supra n. 9.
[12] Not only did this court treat heart attacks and strokes similarly, but the courts of appeal also applied the analysis used in heart attack cases to stroke cases. See, e.g., Daily v. Bechtel Power Corp., 420 So.2d 1337 (La.App. 3d Cir.1982); Lonzo v. Town of Marksville, 430 So.2d 1088 (La.App. 3d Cir.), writ denied, 438 So.2d 576 (1983); and Beaty v. Thiokol Corp., 414 So.2d 1292 (La.App. 2d Cir.), writ denied, 416 So.2d 114 (1982).
[13] See the medical sources cited supra.
[14] See, e.g., Lopez v. U.S. Fidelity & Guaranty Ins. Co., 524 So.2d 760 (La.App. 3d Cir.1988) (pulmonary embolism) and Beaty v. Thiokol Corp., 414 So.2d 1292 (La.App. 2d Cir.), writ denied, 416 So.2d 114 (1982) (abdominal aortic aneurysm).
[15] We think it obvious that La.R.S. 23:1021(7)(e), by its focus on "physical work stress" and preexisting conditions, was not intended to apply to those "heart-related" or "perivascular" injuries which directly result from some physical impact which arises out of and is incurred in the course and scope of employment. For example, "heart-related" under 23:1021(7)(e) would not apply to the injury resulting from the puncture of an employee's chest and heart by a piece of equipment.

Regarding the scope of "perivascular," we note it is medically possible for an aneurysm, embolism, or a severe bruise (which is technically an injury to a vessel) to result from a physical impact to a part of the body. For example, the blow of a falling piece of merchandise or equipment on a limb could cause an embolism or aneurysm at the point of impact. These types of injuries also would clearly not fall under the scope of La.R.S. 23:1021(7)(e).
[16] There are only a handful of court of appeal cases interpreting the meaning of the new burden of proof found in La.R.S. 23:1021(7)(e), all of which are heart attack cases with the exception of the court of appeal opinion in this case. See Pugh v. Beall-Ladymon, 622 So.2d 872 (La.App. 3d Cir.1993), writ denied, 626 So.2d 1171; Johnson v. Petron, Inc., 617 So.2d 1358 (La.App. 3d Cir.), writ denied, 623 So.2d 1338 (1993); Hunt v. Milton J. Womack, Inc., 616 So.2d 759 (La. App. 1st Cir.), writ denied, 623 So.2d 1309 (1993); Charles v. Travelers Ins. Co., 615 So.2d 20 (La.App. 3d Cir.1993) (this case); and Fullerton v. Monroe Trucking Co., 612 So.2d 1028 (La.App. 2d Cir.), writ denied, 616 So.2d 699 (1993).
[17] Having found the legislature has intended through La.R.S. 23:1021(7)(e) to increase the plaintiff's burden of proving a compensation claim for heart attacks and strokes, we note the legislature's actions may have the result, albeit unintended, of exposing some employers, in those cases where the plaintiff can prove the elements of his claim, to the more financially harsh tort liability for those heart attacks and strokes now excluded from compensation coverage, whereas under the prior jurisprudence, those same injuries would have fallen under the scope of the Act.