11YELVERTON, Judge.
Earl Husbands, a truck driver, suffered a stroke on the job and is totally and permanently disabled. He filed a claim for workers’ compensation benefits and medical expenses. The hearing officer denied the claim. Husbands appealed. We affirm.
In 1989 the legislature amended La.R.S. 23:1021 of the Workers’ Compensation Law, adding Subparagraph (7)(e), as follows:
(e) Heart-related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter un *542 less it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
JjThis amendment was in effect when Husbands suffered his stroke on May 23, 1992. By its use of the word “perivascular”, the legislature intended to place claimants who suffered strokes while at work within the purview of La.R.S. 23:1021(7)(e). Charles v. Travelers Ins. Co., 627 So.2d 1366 (La.1993).

FACTS

Husbands was a truck driver who hauled gravel for E.R. Kiper. On May 23, 1992, Husbands was at the shop with a couple of the other drivers servicing their trucks. All employees serviced their own trucks, except for Aubrey Tullis who had a disability that prevented him from servicing his truck other than fueling it.
On that particular day, Husbands, Tullis, and Thomas Mahoney had gone to the shop to change the tires on their trucks. They took a lunch break to eat hamburgers. After eating his hamburger, Husbands began to feel funny and started throwing up. He was brought to the hospital with symptoms of dizziness, blurred vision, and slurred speech. Husbands was diagnosed as having suffered a stroke. He was eventually diagnosed as having suffered an ischemic stroke, which happens when a blood clot dislodges from either neck vessels or from the heart and occludes a blood vessel in the brain.

THE HEARING OFFICER’S DECISION

Husbands filed a Claim Form 1008 seeking workers’ compensation benefits. After a hearing and reviewing the medical evidence, the hearing officer found that Husbands failed to prove any causal relation between his employment and his stroke and also failed to prove that the physical work stress used in changing the tires on his truck was ^extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation. The standard of appellate review applicable to these factual findings is the manifest error standard. Alexander v. Pellerin Marble & Granite, (La.1994); 630 So.2d 706.

LAW

In order for his stroke to be considered a personal injury by an accident arising out of and in the course of employment, claimant must prove by clear and convincing evidence that: (1) his physical work stress was extraordinary and unusual in comparison to the physical work stress experienced by the average employee in that occupation, and (2) that the physical work stress and not some other source of stress or a preexisting condition was the predominant and major cause of the stroke. Charles, 627 So.2d at 1371.
When Husbands suffered his stroke, it was a hot day in May and he was working outside. The other drivers testified that changing the tires was physically strenuous. Husbands claims that this physical work stress was the major cause of his stroke.
Several doctors testified by deposition as to the cause of Husband’s stroke. Dr. William Coney, Husband’s family physician who also examined him at the hospital after the stroke, could not say what caused it. Husbands had some risk factors which made him prone to a stroke. He had high blood pressure which had been under control with medication since June, 1988 and was still under control in March, 1991 when Dr. Coney last saw Husbands before his stroke. Husbands had also been a heavy smoker but had quit in 1984. When he was a child, Husbands had suffered from rheumatic fever which increases the risk of a blood clot coming from the heart.
14Pr. Coney stated that the stroke could have been caused by Husbands’ blood pressure being high. A piece of plaque could have broken off from his heart and caused the stroke. He basically did not know what *543 caused it. It could be a medical problem or it could be related to some kind of exertion at work.
Dr. Arsham Naalbandian, a neurologist who examined Husbands on one occasion, said it was difficult to determine Husbands’ preexisting condition before the accident and therefore determine what caused the stroke. He also said it was possible that heat and overexertion while at work may have contributed to the accident but only if it increased Husbands’ blood pressure. Dr. Naalbandian was also very uncertain as to what caused the stroke.
Husbands also saw Dr. William Kintzing, a family practitioner, when he was admitted to E.A. Conway Hospital in June 1992 because he was having more problems. Dr. Kintzing also felt there was no way to determine what had caused the stroke. He said it was not impossible that changing a tire might have had some impact on his having a stroke. However, he stated it would all be conjecture to say what caused Husbands to suffer a stroke.
Dr. Timothy Nicholls was the only doctor who had an opinion as to what actually caused the stroke. He was of the opinion that atherosclerosis had caused it. He also stated that stress from a job may have precipitated the event by raising his blood pressure, but that the overwhelming contribution to the illness was Husbands’ hypertension, previous smoking, elevated cholesterol, and possibly his cardiac lesions. The stress may have been important to the timing of the event, but not the primary determinate of whether Husbands would have a stroke.
IfiThe medical evidence overwhelmingly indicates that there is no possible way to determine exactly what caused Husbands’ stroke. Husbands was at risk to suffer a stroke due to hypertension, high cholesterol, lesions in his heart, and the fact that he had been a smoker for several years. All doctors agreed that overexertion at work on a hot day might have contributed to Husbands suffering a stroke on that day if it had made his blood pressure increase. However, no doctor was certain as to what caused the stroke except for Dr. Nicholls who felt it was due to a preexisting condition. The hearing officer was not clearly wrong in determining that Husbands failed to prove by clear and convincing evidence that the physical work stress and not some other source of stress or a preexisting condition was the predominant and major cause of the stroke.
This finding alone is sufficient to find claimant failed to meet his burden of proof, but we also note that the evidence reveals that the stress experienced by Husbands was not extraordinary and unusual in comparison to the physical work stress experienced by the other drivers. Charles, 627 So.2d at 1372. The testimony of several of the other drivers and Kiper reveals that the workers were specifically paid to service their trucks. This included changing the tires. On the day of his stroke, Husbands was not doing anything differently than any other driver had done, except for Tullís, who because of a disability only fueled his truck while the other drivers serviced his truck for him.
For the foregoing reasons, the judgment of the Office of Workers’ Compensation is affirmed, costs to be paid by appellant.
AFFIRMED.