670 So.2d 339 (1996)
E.V. CUSTIS, Plaintiff-Appellee,
v.
WHITAKER CONSTRUCTION, Defendant-Appellant.
No. 95-1110.
Court of Appeal of Louisiana, Third Circuit.
January 31, 1996.
Writ Denied April 19, 1996.
*341 R. Stuart Wright, Natchitoches, for E.V. Custis.
Donald J. Anzelmo, Susan Nunez Belsom, St. Monroe, for Whitaker Const.
Before THIBODEAUX, SAUNDERS and SULLIVAN, JJ.
SAUNDERS, Judge.
Defendant appeals the hearing officer's determination that its employee's stroke constituted a compensable workplace accident. We affirm.

LAW
The question is whether the hearing officer correctly concluded that claimant met the burden of proof required of stroke claimants seeking workers' compensation benefits as specified in La.R.S. 23:1021(7)(e). As the Louisiana Supreme Court has observed:
The requirements for a successful claim for worker's compensation benefits are set forth in La.R.S. 23:1031 A, which provides:
If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated. (Emphasis added.)
Effective January 1, 1990, the legislature redefined these requirements with respect to heart-related and perivascular injuries by enacting La.R.S. 23:1021(7)(e), which provides:
Heart-related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death. (Emphasis added.)
This statute makes it more difficult for a claimant to prove that heart-related and perivascular injuries suffered on the job are compensable. Specifically, the amended statute changes the law in such cases in at least three respects. First, it heightens the burden of proof the claimant must show from a preponderance of the evidence to clear and convincing evidence. Second, it changes the standard that the claimant's physical work stress must be compared to, requiring his or her physical work stress to be extraordinary and unusual when compared to the physical work stress of the average employee in that occupation. Third, it heightens the required causal link between that work stress and the heart injury by requiring the physical work stress to be the predominant and major cause of the heart-related or perivascular injury. (Emphasis in original.)
Harold v. La Belle Maison Apartments, 94-0889, pp. 4-5 (La. 10/17/94); 643 So.2d 752, 754.
Harold concerned a claim for benefits following a heart attack. Nonetheless, like a heart attack, a stroke constitutes a "perivascular injury" as contemplated by La.R.S. 23:1021(7)(e). Charles v. Travelers Ins. Co., 627 So.2d 1366 (La.1993); Husbands v. Kiper, 93-1200 (La.App. 3 Cir. 5/4/94); 640 So.2d 540. Therefore, to be entitled to workers compensation benefits, claimant was required to meet the requirements enumerated in La.R.S. 23:1021(7)(e).
The first prong of La.R.S. 23:1021(7)(e) required claimant to prove by clear and convincing evidence that the physical *342 work stress he experienced was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation. La.R.S. 23:1021(7)(e)(i). To do so, claimant had to establish that his "physical work stress went beyond what was usual, regular or customary in relation to the average employee in that occupation." Harold, at p. 6; 643 So.2d at 755.
The following facts are undisputed. On April 21, 1993, claimant was employed by Whitaker Construction Company. A carpenter by trade, the 59 year old's position required that he perform some manual labor. On the day the accident occurred, claimant's crew was engaged in leveling concrete poured into an L-shaped form claimant and others had prepared on the preceding days. The crew was short-handed for the task, with one man out and the crew foreman unable to join the other three due to a pre-existing shoulder injury unrelated to the workplace. Cement trucks which were scheduled to deliver the concrete around 10:00 a.m. arrived an hour late, exacerbating the heat one would already have expected at the work site.
Initially, cement trucks were able to back all the way up to the form and pour the cement through twelve foot chutes to each load's exact destination, requiring less spreading and leveling by claimant and the other two laborers. However, after one of the cement trucks became bogged, this practice was discontinued. Rather than use either of two cherry pickers equipped with telescopic booms and cement buckets, the foreman of the crew instead opted to use a front-end loader which, unlike the cement trucks and cherry pickers, could only dump its loads just inside the wooden forms, requiring the crew to manually spread each freshly poured pile of concrete fifteen (15) to twenty (20) feet.[1] To perform his share of this formidable task claimant, unlike his two thirty year old co-workers who were each provided a "come-along"[2], claimant was merely provided a shovel. This shovel was used by claimant not only to spread concrete but, after directing the front-end loader to the brink of the slab, to break down fresh knee-deep concrete piles for further movement by his co-workers.
After some time passed utilizing this cumbersome process, the laborers asked that the employer momentarily halt the job while they assessed the situation and perhaps put the cherry picker to work. These requests were denied, probably due to the employer's interest in quickly finishing the job and rushing to another which the workers also were expected to accomplish that day.
After working in the heat for a while longer, claimant could go no further. When the foreman again mentioned the need to start the other job, claimant expressed a need for water. It was at this juncture that he was overtaken by a stroke. Turning, claimant's foot became lodged under the concrete reinforcement steel. After freeing his foot, claimant walked towards the water. Disoriented, he could manage only a few steps toward the water cooler at a time. By about 2:30 p.m., the time he arrived at the cooler, claimant could not use his right arm or hand to hold paper cups, to wash his face, or to drink. Claimant has been disabled ever since.
After considering the evidence, the hearing officer concluded that claimant's work stress was extraordinary and unusual in comparison to the stress experienced by the average employee in that occupation. Defendant disagrees. It maintains that claimant's work stress was no different from that of his co-workers.
The manifest error standard applies to the factual findings of a hearing officer. Alexander v. Pellerin Marble & Granite, 93-1698 (La. 1/14/94); 630 So.2d 706; Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992). "The manifest error-clearly wrong standard must be applied even where the evidence before the trier of *343 fact consists solely of written reports, records and depositions." Alexander, 630 So.2d at 710, citing Virgil v. American Guarantee and Liability Ins. Co., 507 So.2d 825 (La. 1987).
In light of the strenuous labors required of claimant, the heat hazards to which he was subjected, his employer's failure to use mechanical (i.e., labor-saving) equipment, the time limitations imposed, and/or the less useful tools furnished claimant for the job for which he was assigned, plaintiff discharged his legal obligation under La.R.S. 23:1021(7)(e)(i) in establishing that his physical work stress was extraordinary and unusual. The hearing officer's determination was not clearly wrong.
The second prong of the amended statute required claimant to prove by clear and convincing evidence that his physical work stress or exertion, and not some other source of stress or pre-existing condition, was the predominant and major cause of his stroke. La. R.S. 23:1021(7)(e)(ii).
In its second and third assigned errors, defendant contends that the hearing officer erred in concluding that claimant's stroke was work-related. According to defendant, the evidence suggested that his stroke arose either from a pre-existing condition or from claimant's agitation in having to start the job late and to work without the help of his foreman.
We find no merit to these contentions. With respect to the former, the fact that claimant had a previously unknown but undoubtedly pre-existing high blood pressure condition is of no consequence where, as here, claimant's physical work stress or exertion and not the pre-existing condition was the predominant and major cause of his stroke. See Harold v. La Belle Maison Apartments, 643 So.2d 752.[3]
Defendant places great emphasis on the cases of Charles v. Travelers Ins. Co., 627 So.2d 1366 and Husbands v. Kiper, 640 So.2d 540, cited above. These cases are distinguished, for in neither did the claimant establish that it was his physical work exertion and not his pre-existing hypertension that was the "predominant and major cause" of his stroke. In Husbands, of four physicians who testified, three, including plaintiff's treating physician, professed uncertainty as to what caused the stroke, while the only doctor who had an opinion as to what actually caused the stroke concluded that the culprit was atherosclerosis and not *344 work exertion; and in Charles, claimant's "routine physician" and the only physician to testify concluded that claimant's pre-existing hypertension and not his work exertion was the "predominate and major cause."
Most importantly, however, in contrast to the present case, in both Husbands and Charles the hearing officer concluded that claimant had failed to meet his burden of proof.[4] The treating physician, Dr. Jack Coussons, indicated that had claimant not suffered from high blood pressure before the accident, it would be unlikely that his work exertion would have caused the stroke, as his work exertion probably would have resulted in a lowering of claimant's blood pressure. On the other hand, according to Dr. Coussons, if claimant indeed had suffered from high blood pressure before the accidentand this is precisely what Dr. Coussons seems to have suspectedthe doctor "would say it's [sic] more probable than not" that his workplace exertion was the predominant and major cause of the stroke, with his workplace aggravation playing an important though relatively minor role.
We have reviewed the evidence. The hearing officer before whom the evidence and claimant's demeanor were presented determined that claimant successfully carried his burden of demonstrating by clear and convincing evidence that his physical work stress and not some other source of stress or pre-existing condition was the predominant and major cause of his stroke. Taking into account both the hearing officer's capacity to evaluate live witnesses (as compared with our access only to a cold record) and upon the proper allocation of trial and appellate functions,[5] we affirm her conclusions.
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Bruno v. Harbert Intern., Inc., 593 So.2d 357, 361 (La.1992), quoting Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989).
This is such a case. The record establishes that the hearing officer's findings are not clearly wrong. Arceneaux v. Domingue. 365 So.2d 1330 (La.1978). For this reason, the judgment of the hearing officer is affirmed, at defendant's costs.
AFFIRMED.
NOTES
[1] This distance was far greater than would have been the case had the employer opted to use the cherry picker.
[2] A come-along is described in the record as being a concrete leveling implement similar to a large rake that does not require repetitive stooping, bending and lifting.
[3] By analogy, see Harold v. La Belle Maison Apartments, at 9-10; 643 So.2d at 757:

The defendant claims that Harold's claim must fail because Dr. Snyder stated that her heart attack "would have happened sooner or later anyway" (apparently because she had significant blockage in two major arteries as well as in side arteries), and that he could not definitively state why the heart attack happened when it happened. These factors are insufficient to defeat Harold's claim for worker's compensation benefits for several reasons. First, a heart attack claimant's case does not fail simply because the medical expert cannot definitively state what the primary cause of the heart attack was. Second, the defendant's argument is essentially that, because Harold had a previously unknown but undoubtedly existent heart disease, which prompted Dr. Snyder to conclude that her heart attack was inevitable, this condition must have been the primary cause of her heart attack, so she cannot recover. We disagree. In our opinion, the legislature did not intend this result when it inserted the term "preexisting" in La.R.S. 23:1021(7)(e)(ii). To deny recovery to all heart attack claimants who have existent but unknown coronary artery disease would basically mean that no heart attack claimants would recover. Allowing the discovery of occluded arteries after the fact of a heart attack to preclude recovery of worker's compensation benefits is an overbroad reading of the statute. We do not think the legislature intended to eliminate all individuals with coronary artery disease from coverage of the worker's [94-0889 La. 10] compensation laws. Instead, it made such claims more difficult to prove by adding the heightened requirements of La.R.S. 23:1021(7)(e). Statutes must be construed in a manner to effectuate their purpose. Smith v. Cajun Insulation, Inc., 392 So.2d 398, 400 (La.1980). In addition, it is well settled that worker's compensation laws must be given a liberal interpretation. Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1006 (La.1989). Applying these principles, we hold that La.R.S. 23:1021(7)(e) must not be construed to preclude recovery of worker's compensation benefits simply because the claimant suffers from previously unknown but undoubtedly existent coronary artery disease. As long as such a claimant meets the heightened burden of proof imposed by the amended statute, he or she can recover.
(Notes omitted.)
[4] Indeed, as in both the Husbands and Charles cases, the conclusions reached by the hearing officer were neither manifestly erroneous or clearly wrong.
[5] See Canter v. Koehring Company, 283 So.2d 716 (La.1973).