806 So.2d 848 (2001)
Theresa B. HOOD (Spouse of Clifton J. Hood, Jr.)
v.
METRO INDUSTRIAL CORPORATION.
No. 2000 CA 2158.
Court of Appeal of Louisiana, First Circuit.
December 28, 2001.
Rehearing Denied February 21, 2002.
*849 Nolan P. Lambert, John D. Lambert, Jr., New Orleans, LA, for plaintiff-appellee, Theresa B. Hood (Spouse of Clifton J. Hood, Jr.)
Michael L. Hyman, Baton Rouge, LA, for defendant-appellant, Metro Industrial Corporation.
Before: CARTER, C.J., PARRO, and CLAIBORNE,[1] JJ.
CLAIBORNE, Judge.
Appellant seeks reversal of the judgment rendered by the Honorable Anthony P. Palermo, Office of Workers' Compensation Administration, District 5,[2] finding the *850 decedent's widow entitled to benefits under the Louisiana workers' compensation statute. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
This action arises from the death of 60-year-old, Clifton J. Hood, Jr. (Hood), who died as a result of a heart attack which occurred on September 21, 1998, while in a portable toilet enclosure or "port-o-let" on a Metro Industrial Corporation (Metro) job site. At the time of his death, Hood was working as a plumber for Metro, along with his son, David Hood, and his brother-in-law and Metro owner, Frank Basso.
The three-man plumbing crew had a deadline to install sewer/water lines at two houses scheduled for that day. Metro usually scheduled only one house per day; however, they were attempting to finish plumbing work on more homes in the month of September to meet a bonus incentive for their client, Jim Walter Homes. At the first scheduled house, the crew was unexpectedly required to dig a 25-foot trench to reroute the sewer line from the house to the city sewer line. The crew did not normally dig the trenches for the sewer lines, but at this house the original layout provided by their client was incorrect. It was a hot day (91 degrees), and the digging was particularly difficult because of oyster and clam shells in the ground. It took the crew about three hours to finish the job at the first house. They took turns digging with shovels and a pick, then they installed the line and recovered the trench.
The crew ate lunch while driving for about thirty minutes to the second job site scheduled for the day. They arrived at the second house around 1:00 p.m. Sometime before 3:00 p.m., Hood went into a port-o-let located on the job site at the second house. While in the port-o-let, Hood apparently suffered an acute heart attack. He was discovered unconscious and unresponsive in the port-o-let. An ambulance was called, and Hood was taken to the nearest hospital where he was pronounced dead from an acute myocardial infarction (heart attack). No autopsy was performed.
Hood's widow, Theresa B. Hood (appellee), filed a disputed claim for compensation after Metro refused to pay death benefits and funeral expenses related to Hood's death. Metro denied that Hood's death was work-related. A trial was held, and the workers' compensation judge (WCJ) rendered judgment in favor of appellee, ordering appellant, Metro, to pay death benefits of $117.00 per week, retroactive to the date of Hood's death, plus $5,000.00 for funeral expenses.
Metro appealed the judgment, arguing the WCJ erred in finding that Hood suffered a heart attack compensable under La.R.S. 23:1021(7)(e). Appellee answered the appeal, arguing the WCJ erred in failing to award attorney's fees and penalties for Metro's arbitrary and capricious refusal to pay surviving spouse death benefits and funeral expenses.

STANDARD OF REVIEW
The standard for reviewing workers' compensation cases was summarized by the Louisiana Supreme Court in Seal v. Gaylord Container Corp., 97-0688, pp. 4-5 (La.12/02/97), 704 So.2d 1161, 1164, as follows:
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest *851 error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. "Thus, `if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" (Citations omitted.)
Appellant urges this court to revisit the issue of whether the manifestly erroneous standard of review is the proper appellate standard of review applicable to review of decisions of a WJC. We decline. Appellant argues that Louisiana Constitution Article V, Section 10(B) requires appellate courts to utilize the standard of review set forth in the Louisiana Administrative Procedures Act in reviewing a decision of a WCJ. While this argument has not been specifically addressed, the Supreme Court has established a line of jurisprudence holding that the manifest error standard applies. We are not emboldened by appellant's argument to challenge the jurisprudence.

LAW AND ANALYSIS
If an employee receives a personal injury by an accident arising out of and in the course of his employment, the employer is required to pay compensation benefits. La.R.S. 23:1031(A). In cases in which an employee suffers a heart-related injury or death, the claim for benefits is governed by La.R.S. 23:1021(7)(e) which provides:
(7)(e) Heart-related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
(i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
(ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.
(Emphasis added.)
Both prongs of the test set forth in La.R.S. 23:1021(7)(e) must be satisfied for the claimant to prevail. Thus, appellee had the burden to prove by clear and convincing evidence that Hood's physical work stress on the day of his fatal heart attack was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in the plumbing occupation. Appellee also had the burden to demonstrate that the physical work stress or exertion, and not some other source of stress or pre-existing condition, was the predominant and major cause of Hood's fatal heart attack.
To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Gooden v. B E & K Construction, 33-457, p. 5 (La.App. 2d Cir.6/23/00), 764 So.2d 1206, 1210. The heightened burden in La.R.S. 23:1021(7)(e) is intended to exclude from coverage an employee who just happened to have a heart attack while performing his job. City of Oakdale v. Smith, XXXX-XXXX, p. 8 *852 (La.App. 3d Cir.5/2/01), 788 So.2d 507, 514, writ denied, XXXX-XXXX (La.9/14/01), 796 So.2d 685.
At trial, appellee testified that her husband had been a master plumber for 17 years and he worked with her brother, Frank Basso, at Metro for approximately two years prior to his death. Appellee also testified that her husband took daily medication for high blood pressure which was under control at the time of his death.
Frank Basso testified that on September 21, 1998, Metro was "pushing" to finish the plumbing work on two houses and they were behind schedule. He stated that the three-man crew had more than the usual amount of work to do on that day and that the digging of the trench was very unusual. Basso testified that it was especially out of the ordinary for Hood and other members of the crew to be required to dig because the crew did not normally dig trenches for any of their plumbing jobs, and if they were forced to dig, the younger crew members (David or Basso) would have done it. Basso testified that Hood usually cut pipe, worked underneath houses or helped stub-out lines inside the houses. On that particular day, due to the unusual work schedule and the particularly strenuous digging conditions (the high temperature and oyster/clam shells in the dirt), the crew (including Hood) took turns digging the rerouted sewer trench. After digging the trench, the crew laid the sewer line, tied into the city sewer line, and covered up the trench. The physically demanding process took approximately three hours. Basso also testified that at the second job site, Hood worked for about 1 ½ hours under that house before going into the hot port-o-let at the site.
Appellee offered the deposition testimony of three medical experts at trial. Metro did not offer any medical evidence to refute appellee's witnesses. Dr. Edward J. Dease, III, was the emergency room physician who attempted to revive Hood after he was brought to the hospital. Dr. Dease stated that there was a "strong, high probability" that Hood had suffered a heart attack that caused his death.
The coroner who signed Hood's death certificate, Dr. Kim E. LeBlanc, also testified that in his opinion Hood died of a heart attack. He based his opinion on the whole case history as related to him: Hood's age (60), history of hypertension, strenuous physical activity prior to death, and possible underlying coronary artery disease.
Dr. James A. Hargroder was Hood's treating physician for hypertension. Dr. Hargroder stated that the last time he treated Hood for hypertension was on June 27, 1997, and Hood's blood pressure was under control at that time. Dr. Hargroder was not treating Hood for any other ailment, but he did note a previous history of high cholesterol and a heart catheterization performed in 1986. (Dr. Hargroder did not perform Hood's heart catheterization; he merely noted that the catheterization revealed a 20% blockage which, in his opinion, was not an indication of significant coronary artery disease.) He testified that Hood more probably than not died of a heart attack.
Most significantly, Dr. Hargroder believed that the physical work stress that Hood endured on the day of his death (i.e., the strenuous physical exertion of digging in the heat) was the predominant cause of the heart attack. Dr. Hargroder opined that the high temperature outside and inside the port-o-let would have been a contributing factor which caused an increase in Hood's heart rate and blood pressure. Dr. Hargroder clearly stated that Hood's death was predominantly caused by the *853 work stress, regardless of any pre-existing conditions Hood may have had.
Based upon our review of the evidence, we find that the appellee proved by clear and convincing evidence that the work stress was extraordinary and unusual on the day of Hood's death and that the predominant and major cause of Hood's death was by a heart attack was brought on by the physical work stress. We agree with the WCJ that Basso's testimony provided the evidence for the requirement of Hood's unusual and extraordinary work stress as compared to the average plumber. It is the usual duties of the employee and his peers that must be examined to determine whether the particular work stress forming the basis of the heart-related injury was extraordinary. See City of Oakdale, XXXX-XXXX at 5, 788 So.2d at 512. Basso's uncontradicted testimony provided ample evidence that it was unusual and extraordinary for the Metro employees, and in particular Hood, to dig a trench while performing their plumbing duties.
We also agree that Hood's treating physician, Dr. Hargroder, provided sufficient evidence to meet the second requirement that Hood's heart attack was predominantly caused by his physical work stress on the day of his death, and not some pre-existing condition. Our jurisprudence accords superior weight to the diagnosis and opinions of treating physicians. Jaeckle v. Dresser Industries, Inc., 457 So.2d 646, 648 (La.1984). Furthermore, the mere existence of a pre-existing medical condition or risk factor such as obesity or hypertension will not prevent recovery under La.R.S. 23:1021(7)(e). City of Oakdale, XXXX-XXXX at 8, 788 So.2d at 514.
Metro did not present evidence to contradict the medical testimony of Dr. Hargroder or the testimony of Basso regarding Hood's extraordinary and unusual physical work stress on the day of his death. The WCJ's conclusion that Hood's heart attack was compensable under the applicable statute was reasonable in light of the facts and evidence presented at trial. We find no manifest error in the judgment awarding surviving spouse death benefits and funeral expenses to appellee.
A review of our jurisprudence reveals the WCJ's decision is comparable to many cases awarding benefits after a heart attack where the claimant had the sudden onset of symptoms at work after performing a difficult task not part of the usual or regular duties, sometimes in hot weather, and a medical expert attributed the work exertion as a predominant cause of the heart attack. See Coscino v. Louisiana State Boxing and Wrestling Commission, 97-2733 (La.App. 4th Cir. 9/9/98), 718 So.2d 1016; Oxley v. Sattler, 97-1299 (La. App. 3d Cir.2/18/98), 710 So.2d 261, writ denied, 98-1864 (La.4/23/99), 739 So.2d 183; McClendon v. Keith Hutchinson Logging, 96-2373 (La.App. 1st Cir. 11/7/97), 702 So.2d 1164, writ denied, 97-2872 (La.2/13/98), 706 So.2d 995; Custis v. Whitaker Construction, 95-1110 (La.App. 3d Cir.1/31/96), 670 So.2d 339, writ denied, 96-0553 (La.4/19/96), 671 So.2d 920; Morris v. Reve, Inc., 95-310 (La.App. 5th Cir. 10/18/95), 662 So.2d 525, writ denied, 95-3037 (La.2/16/96), 667 So.2d 1055; Debona v. Pawn, 94-430 (La.App. 3d Cir.11/2/94), 649 So.2d 449, writ denied, 94-2878 (La.1/27/95), 650 So.2d 242.
Finally, appellee contends the WCJ erred in failing to award penalties and attorney's fees for Metro's arbitrary and capricious failure to pay death benefits and funeral expenses. However, the WCJ noted the lack of any evidence tending to show arbitrary or capricious behavior on the part of Metro. Metro was faced with a questionable death of an employee in a port-o-let on a job site. We do not find Metro's position that Hood's death was not *854 compensable under the workers' compensation statute to be arbitrary, capricious or without probable cause. This case presented a factual dispute as to whether Hood's heart attack was work-related; therefore, Metro had probable cause to refuse benefits. The WCJ has great discretion in determining whether an award of penalties and attorney's fees is warranted, and in this case the WCJ did not err in its determination. See Oxley v. Sattler, 97-1299 at 9, 710 So.2d at 266.

DECREE
For the foregoing reasons, we hereby affirm the workers' compensation judge's awarding appellee, Theresa B. Hood, death benefits and funeral expenses as a result of her husband's death and entitlement to compensation benefits pursuant to La.R.S. 23:1021(7)(e). All costs of this appeal are assessed to appellant, Metro Industrial Corporation.
AFFIRMED.
NOTES
[1] Judge Ian W. Claiborne, retired, is serving as judge pro tempore by special assignment of the Louisiana Supreme Court.
[2] La.R.S. 23:1310.5(F) requires that the published court of appeal opinion identify the office of workers' compensation district from which the appeal was taken and the name of the workers' compensation judge who rendered the judgment or award.