YELVERTON, Judge.
In this worker’s compensation case, the trial judge found that plaintiff Arvin L. Daily suffered a light stroke on August 14, 1980, while at work. Within an hour of the first incident and while he was in the hospital emergency room, he suffered a second light stroke. He never returned to work. Two weeks from the initial incident, he suffered a third, major stroke, which left him totally and permanently disabled. The trial court concluded that the circumstances were such that a causal relationship could be inferred because there was proof of an accident at work and ensuing disability with no intervening cause. He awarded benefits at the rate of $163 a week beginning August 14, 1980, during disability, Penalties and attorney’s fees were denied. Only the defendant appeals. We affirm.
The defendant questions the trial court’s conclusions as to: (1) the accident, (2) causation between the job/work stress and the accident, and (3) causation between the accident and disability. These are the three issues on appeal.
Since this case was decided in the trial court, our Supreme Court has rendered four important decisions refining the law as it bears on the subject matter issues presented by this appeal. These cases are Hammond v. Fidelity & Casualty Company of New York, 419 So.2d 829 (La.1982); Adams v. New Orleans Public Service, Inc., 418 So.2d 485 (La.1982); Guillory v. United States Fidelity & Guaranty Ins. Co., 420 So.2d 119 (La.1982), and Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982).
We will first narrate the basic facts, then we will take up the issues presented by this appeal. We will consider the impact of the above decisions on these facts as we discuss the issues.
Plaintiff, 59, a carpenter for Bechtel Power Corporation at its plant in Westlake, *1339 Calcasieu Parish, had been working several hours on August 14, 1980 moving and sawing boards, and shoring up an embankment. At mid-afternoon he and his co-worker, Richard McNabb, paused from their work and were standing beside the embankment. Suddenly plaintiff became faint and pale, began to stutter badly, and asked for help. He could not stand or walk unassisted. McNabb tried to support him to the shop, but plaintiffs legs were giving out and he wanted to go in the wrong direction. McNabb hailed a passing truck. Plaintiff was taken to the first aid station, given oxygen, then removed by ambulance to St. Patrick Hospital in Lake Charles. By the time he got to the emergency room, perhaps 30 minutes after the initial episode, he was all right. The emergency room nurse called Dr. Looney, telling him only that a patient was there who had had a fainting spell, but that the patient was then all right. The doctor told the nurse to release him to go home. Minutes later, the nurse called Dr. Looney again, telling him that the patient was unable to move his arm and leg and was exhibiting facial weakness and slurred speech. The nurse felt these symptoms indicated a classic ischemic attack. Based on what the nurse told him, Dr. Looney countermanded his order to send the patient home; instead, he ordered him put in intensive care.
The doctor then called in Dr. Woodard, an internist. In the intensive care unit these doctors saw plaintiff for the first time. He had returned to normal from the second attack by the time they actually saw him. The second attack was “pretty bad”, said Dr. Looney, according to their understanding of the symptoms, and the doctors were concerned about it. However, the physical examination performed at that time was normal except for mildly elevated blood pressure.
Plaintiff was kept in the hospital for three days. During that time further tests were run and an arteriogram revealed diffused arteriosclerotic changes (diffused hardening of the arteries) in the arteries on the right side of the brain supplying the area of the brain which controls the functions of the left side of the body. The formal name for this condition is arterio-sclerotic cerebral vascular disease. The tests also determined that he had suffered no permanent damage from the two events at work and in the hospital. The doctors described these events as transient ischemic attacks, in lay terms called light strokes or mini-strokes.[1]
According to the medical testimony an ischemia occurs when there is insufficient oxygen to the brain. A transient attack will leave no damage because the oxygen supply has not been cut off long enough to cause damage. A person suffering a transient ischemic attack will be no worse off afterwards. Dr. Looney likened transient ischemia to angina pectoris. He said both were symptoms, transient ischemia manifesting itself in a temporary oxygen deficiency to the brain, caused by arteriosclerosis in the vessels leading to the brain and angina manifesting itself in temporary oxygen deficiency to the heart muscle, caused by arteriosclerosis in the vessels leading to the heart. Transient ischemia does not cause damage to the brain cells, and angina pectoris does not cause damage to heart muscle; hence, according to the medical testimony, the patient is no worse off after *1340 the attack than before. The incidents of attack are manifestations of a pre-existing disease. The doctors said that plaintiff’s arteriosclerotic cerebral vascular disease pre-existed the incident on the job. Plaintiff’s condition could not be corrected by surgery.
When plaintiff was discharged from the hospital three days after he was admitted, both doctors felt that he was a sure candidate for future strokes. It happened as they predicted; two weeks later he suffered a major stroke. He has been disabled ever since.
ACCIDENT
The first issue raised by defendant is whether the attack suffered by plaintiff was an accident.
An accident is defined in La.R.S. 23:1021(1) as
“... an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury.”
In Guillory v. United States Fidelity & Guaranty Ins. Co., supra, plaintiff suffered a fainting spell related to the aortic valvular stenosis caused by a deficiency in the amount of blood reaching the brain, remaining unconscious for several minutes. This was an accident. In Adams v. New Orleans Public Service, Inc., supra, plaintiff suffered an attack of angina pectoris, or chest pain, caused by an insufficient supply of oxygen to the heart muscle. This was an accident. Likewise, in the instant case Daily suffered stuttering, weakness, faintness, paleness, disorientation and inability to stand and walk unassisted. The event was not gradual, but sudden, and plaintiff’s coworker could tell by looking at him that something had happened to him. He had an accident.
CAUSATION BETWEEN THE JOB/ WORK STRESS AND THE ACCIDENT
The second issue is whether work related stress or exertion preceding the initial is-chemic attack bears a causal relationship to that attack. In resolving this issue, the case of Guidry v. Sline Industrial Painters, Inc., supra, is instructive. In Guidry, the plaintiff performed physical and fairly strenuous work before lunch which included painting and bracing a ladder. After lunch he continued his work until 2:00 P.M. when he stopped for a smoke break. It was during the break while he was sitting down smoking a cigarette that he suffered a heart attack from which he later died. In concluding that a heart attack must be causally related in part, however slight, to the accident, the Supreme Court stated:
“There is admittedly real difficulty in proving or disproving work related causation in heart accidents because of the fact that a pre-existing vascular infirmity can produce disability irrespective of outside influences. Nonetheless, considering the often divergent and uncertain views of medical practitioners and the necessarily different perspectives of doctors and lawyers on this problem in compensation cases, (footnote omitted) we have decided in prior cases that work related stress or exertion preceding a heart attack bears a-causal relationship to that heart attack, at least in part, even where there is a pre-existing heart disease.
“There is no presumption, however, that a vascular accident occurring on the job is caused by the employment. There must be a causal link between the employment, or the work, and the accident. And of course, the law imposes upon the plaintiff in compensation cases, as it does in other civil cases, the burden of proving that causal link by a preponderance of the evidence. Prim v. City of Shreveport, 297 So.2d 421 (La.1974).
“This burden of plaintiff’s is to show by a preponderance of the evidence that the work effort, stress or strain in reasonable probability contributed in some degree to the heart accident. Anything less and it can hardly be said that the accident arose out of the employment or that *1341 the employment in any measure contributed to the accident.”
The Supreme Court then concluded based upon the medical testimony that a causal relationship between the work and the heart attack had been established.
In the present case plaintiff had the burden to show by a preponderance of the evidence that the work effort, stress or strain in reasonable probability contributed in some degree to his accident at work. The trial court found such a relationship and we agree. We do not have a medical opinion in the record regarding causation between plaintiffs work/stress and the is-chemic attack on the job. This is because no doctor was made aware of the symptoms, other than dizziness, displayed by plaintiff at the job site.
The only testimony in the record which assists us in making this determination of causation is that of Dr. Looney.[2] He was asked if he could establish some relationship between hard work and the plaintiff’s subsequent ischemic attack in the hospital. His response was prefaced by a gratuitous hypothetical: if plaintiff was on the job doing hard work and “developed slurred speech, inability to move his arm or leg, then I might be tempted to put some causal relationship ...” His response to the question was that since the emergency room ischemic attack happened in the hospital, estimated by him to be 45 minutes to an hour after he left the job, the doctor could not believe there was a causal relationship present. The inference is clear: had the doctor been aware of the symptoms exhibited at the job site, based on which an is-chemic attack must logically be deduced, and the close relationship in time between the attack and the work being performed, he would have found a direct relationship.
We conclude that there was a relationship between the work/stress and the episode suffered on the job.
CAUSATION BETWEEN THE ACCIDENT AND DISABILITY
The final issue is whether the job related accident caused or contributed to the disability.
It is undisputed that plaintiff is presently disabled. He was seen by Dr. Roy Harding on July 31, 1981 who found that he was indeed the victim of a major stroke. He is partially paralyzed on the left side. He drags his left foot when he walks. He has poor coordination. Plaintiff’s testimony was that when he returned to the Bechtel offices on August 29 to pick up his tools, he suffered the stroke that left him in his present condition. All three of his strokes occurred in the month of August, 1978. Dr. Looney had no notes but he testified that he remembered that plaintiff had suffered the major stroke, which did not surprise him at all. Lay witnesses testified that plaintiff’s present condition goes back to August of 1978.
Defendant does not seriously dispute plaintiff’s present condition or its duration. Defendant’s argument is that the ischemic attacks, whether one or two, suffered by plaintiff on August 14,1978 were transient, which by medical definition means that they passed without doing any damage, and that plaintiff was in exactly the same medical condition after the attacks as he was in before. Defendant argues that all that changed as a result of the ischemic attacks on August 14 is that afterwards plaintiff and the doctors knew that he had diffused arteriosclerosis in the vessels leading to the brain, whereas before the episode they did not know he suffered from that condition. In other words, defendant argues that a transient ischemic attack is but a symptom of the pre-existing arteriosclerosis and that a symptom cannot of itself be the cause of disability.
This argument was considered and rejected in Guillory v. United States Fidelity & *1342 Guaranty Ins. Co., supra, which involved an aortic stenosis situation, where work stress prompting an unsatisfied need for blood to the brain precipitated fainting. The same argument was also presented, and rejected, in the case of Adams v. New Orleans Public Service, Inc., supra, where angina pectoris, or heart pain, was precipitated by an unsatisfied need for blood into the heart.
Although Dr. Looney testified that he could not assign the on-the-job accident as the cause of plaintiff’s problems, it is clear when read in the context of his whole testimony that he was referring to a causation relationship between the work and hardening of the arteries. The law is clear that plaintiff is not required to prove that the employment caused his arteriosclerosis. See Adams v. New Orleans Public Service, Inc., supra.
The latest expression of the Supreme Court on this subject is Hammond v. Fidelity & Casualty Company of New York, 419 So.2d 829 (La.1982), where the court stated:
“The fact that a condition is pre-existing does not preclude recovery for the disabled employee; the employer takes the employee as he is, and the fact that the disease alone might have disabled the employee in its ordinary course of progress is not the inquiry. The employee’s disability is compensable if a pre-existing disease or condition is activated or precipitated into disabling manifestations as a result of a work accident.”
In the present case Daily was not disabled prior to the accident but he has been disabled since the accident. The accident was the first time plaintiff suffered from the symptoms of paralysis and slurred speech. Approximately an hour after the initial incident the plaintiff suffered a similar incident. At the hospital the plaintiff was diagnosed for the first time as having arteriosclerotic cerebral vascular disease. Two weeks later plaintiff suffered a stroke totally disabling him. It is clear from, these facts that plaintiff’s pre-existing disease was activated into disabling manifestations by the accident. Therefore we cannot state that the trial court was clearly wrong in finding that the accident caused the disability.
For the reasons assigned, the judgment of the district court is affirmed at defendant’s costs.
AFFIRMED.

. The doctors were knowledgeable of only the one ischemic attack that occurred in the hospital. Their knowledge of this incident was based on what the emergency room nurse told them, as they were not present when it occurred. They were under the impression that the episode at work was accompanied only by symptoms of faintness which by itself, they said, would not suggest an ischemic attack. The actual description by his fellow worker of plaintiffs symptoms at the job site, as well as plaintiffs testimony that he felt the same on both occasions, indicate that plaintiff had an ischemic attack at the job site as well. The trial judge found that Daily exhibited basically the same symptoms on the job as in the hospital. From our review of the record, we cannot say that the trial court was clearly wrong in this factual finding.

. Although Dr. Woodard testified that the dizziness and faintness at work was easily related to plaintiffs work, this opinion was formulated on the assumption that such accident was merely a dizzy spell.