# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-891

**DENNIS WOODARD**

**VERSUS**

**CHICAGO BRIDGE & IRON**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 3
PARISH OF CALCASIEU, NO. 18-02116
CHARLOTTE  BUSHNELL, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

**AFFIRMED.**

**Tina L. Wilson**
**Cox, Cox, Filo, Camel & Wilson, LLC**
**723 Broad Street**
**Lake Charles, LA 70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Dennis Woodard**

**John J. Rabalais**
**Matthew D. Crumhorn**
**Rabalais Unland, LLP**
**1404 Greengate Drive, Suite 110**
**Covington, LA 70433**
**(985) 893-9900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Chicago Bridge & Iron**

**SAUNDERS, Judge.**

In this case we must decide whether the workers' compensation judge's ruling that Claimant's injury is compensable under the Louisiana Workers' Compensation Act was proper.

**FACTS AND PROCEDURAL HISTORY:**

Claimant, Dennis Woodard (Mr. Woodard), began working for Chicago Bridge & Iron (CB&I), in June 2016. As a foreman for CB&I, Mr. Woodard earned $35.50 per hour and worked 60-70 hours per week. For many years, Mr. Woodward had been prescribed Lisinopril at a dosage of 10 mg for a congenital single kidney. The medication was not to control his blood pressure, but rather to preserve the function of his one remaining kidney. Mr. Woodard testified that he never had any problems working while on the medication and that the medication had never had any adverse side effects on his ability to work. Further, Mr. Woodward worked for CB&I for approximately a year while taking Lisinopril with no issues.

On May 20, 2017, Mr. Woodard reported to work at the Cameron LNG facility in Hackberry, Louisiana around 7:00 a.m. Thereafter, he consumed two bottles of water. Mr. Woodard testified that he always had water with him and consumed it regularly due to his congenital single kidney. He performed his normal job activities that day, which consisted of walking the job site overseeing projects. Around 10:00 a.m., Mr. Woodard was shooting a grade on a project when he passed out. He was brought to the Prime medical clinic onsite and then transported to the Prime medical facility offsite. He was then brought to Christus St. Patrick Hospital, where he was diagnosed with dehydration and heat exhaustion. He was treated with fluids and released.

Mr. Woodard testified that the syncopal episode on May 20, 2017, was the first time he passed out. He testified that during the summer of 2016, he almost

passed out from excessive heat while at work for CB&I, but had never completely passed out until May 20, 2017.

Mr. Woodward attempted to return to work, however, CB&I required that he get cardiac clearance and refused to allow him to return to work until that was done. Mr. Woodard was able to see cardiologist, Dr. Thomas Mulhearn, on June 1, 2017. By the time Mr. Woodard saw Dr. Mulhearn, he had experienced additional syncopal episodes. Mr. Woodard admitted that he passed out at home after the May 20, 2017 incident.

Over the next couple of months, Dr. Mulhearn ran a battery of cardiac tests on Mr. Woodard, including a tilt test, a cardiac catherization, and an electrocardiogram (EKG), all with negative findings. On July 21, 2017, Dr. Mulhearn released Mr. Woodard to return to work with no restrictions from a cardiac standpoint, finding absolutely no cardiac issues. The medical expenses incurred by Mr. Woodard to obtain cardiac clearance at the request of CB&I were paid for with his personal health insurance with the co-pays and deductible paid out-of-pocket by Mr. Woodard.

Mr. Woodard testified that he reported back to work on July 24, 2017, and was told that he would not be allowed to return to work until he was cleared by Prime Medical. The next day, July 25, 2017, Mr. Woodard did return to the job site. However, once he resumed his duties, he began feeling faint and dizzy. Again, he was brought to the Prime medical clinic onsite and then transported to the Prime medical facility offsite. From there, he was brought by ambulance to Christus St. Patrick Hospital, where he was again diagnosed with dehydration and heat exhaustion. He was given fluids and discharged.

Mr. Woodard testified that he was required to have a release from his primary care physician to return to work and saw Dr. Steven Springer. Dr. Springer advised

2

him that he could return to work, but he would not be able to work in the heat. CB&I could not or would not accommodate Mr. Woodard's restrictions and terminated his employment. CB&I has made no attempts to accommodate Mr. Woodard's restrictions. In addition, they never initiated vocational rehabilitation services to attempt to return Mr. Woodard to suitable employment.

On August 22, 2017, Mr. Woodard found employment with D&G Construction (D&G) as a foreman and a heavy equipment operator. Mr. Woodard's employment with D&G allows him to work in climate-controlled machinery. In addition, when he is required to be outside, he has a company truck which D&G allows him to retreat to in order to cool off, if needed. At D&G, Mr. Woodard earns $26.00 and his hours vary, but he does not usually work forty hours per week.

On April 6, 2018, Mr. Woodard filed a Form 1008 Disputed Claim for Compensation. In the claim, Mr. Woodard alleged that CB&I failed to pay indemnity benefits and medical benefits and that he was owed penalties and attorneys fees for the employer's arbitrary and capricious handling of his claim.

On June 3, 2019, a trial on the merits was held at the Office of Workers' Compensation, District 03. After the trial, the workers' compensation judge (WCJ), citing the testimony of Mr. Woodard's treating physicians, Dr. Thomas Mulhearn and Dr. Steve Springer, found that Mr. Woodard carried his burden of proving that he was injured during the course and scope of his employment with CB&I. The WCJ found the testimony of Mr. Woodard to be reliable, credible, and consistent. Further, the WCJ found a strong connection between Mr. Woodard's medical condition and the work conditions.

The WCJ ruled that Mr. Woodard is entitled to: (1) Weekly indemnity benefits in the amount of $657.00 per week from May 20, 2017 until August 22, 2017; (2) Supplemental Earnings Benefits (SEB) for any and all months he is unable to earn

3

90% of his pre-accident average monthly wage; (3) All medical expenses, including reimbursement of all out-of-pocket expenses incurred to obtain clearance from a cardiologist; (4) Penalties totaling $6,000.00; and (5) Attorney fees in the amount of $9,500.00.

On September 20, 2019, CB&I filed a Motion for Suspensive Appeal, alleging the following seven assignments of error:

1. The Workers' Compensation Judge committed manifest error and the decision was clearly wrong in finding that Appellee sustained an "injury" in the course and scope of his employment with the Appellant.

2. The Workers' Compensation Judge committed an error of law, warranting a *de novo review*, in not applying La.R.S. 23:1201(8)(e), as Appellee's standard of proof.

3. The Workers' Compensation Judge committed manifest error and the decision was clearly wrong in finding that Appellee is entitled to weekly indemnity benefits in the amount of $657.00 per week from May 20, 2017 until August 22, 2017.

4. The Workers' Compensation Judge committed manifest error and the decision was clearly wrong in finding that Appellee is entitled to Supplemental Earnings Benefits for any and all months he is unable to earn 90% of his pre-accident average monthly wage.

5. The Workers' Compensation Judge committed manifest error and the decision was clearly wrong in finding that Appellee is entitled to all medical expenses, including reimbursement of all out-of-pocket expenses incurred to obtain clearance from a cardiologist.

6. The Workers' Compensation Judge committed manifest error and the decision was clearly wrong in finding that Appellee is entitled to penalties totaling $6,000.00.

7. The Worker's Compensation Judge committed manifest error and the decision was clearly wrong in finding that Appellee is entitled to attorney fees in the amount of $9,500.00.

**ASSIGNMENT OF ERROR NUMBER ONE:**

In its first assignment of error, CB&I contends that the WCJ committed manifest error and the decision was clearly wrong in finding that Mr. Woodard

sustained an "injury" in the course and scope of his employment with CB&I. We find no merit to this contention.

"Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Foster v. Rabalais Masonry, Inc.*, 01-1394, p. 2 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied*, 02-1164 (La. 6/14/02), 818 So.2d 784 (citation omitted).

An injury is compensable when: 1) the employee was "engaged in his employer's business" and 2) "the necessities of the employer's business reasonably require[d] the employee [to] be at the place of the accident at the time of the accident." *Guidry v. Serigny*, 378 So.2d 938, 940 (La.1979) citing *Kern v. Southport-Mill*, 141 So. 19 (La.1932).

In *Fontenot v. Wal-Mart Stores, Inc.*, 03-1570, 870 So.2d 540 (La.App. 3 Cir. 4/7/04), *writ denied*, 04-1131, 876 So.2d 843 (La. 6/25/04), (citations omitted), this court noted:

> Louisiana Revised Statutes 23:1031 provides that a claimant may receive workers' compensation benefits from an "accident arising out of and in the course of his employment." The claimant may recover after proving, by a preponderance of the evidence, that the accident occurred "on the job site and that an injury was sustained."

CB&I contends on appeal that Mr. Woodard did not sustain an injury in the course and scope of his employment. CB&I insists that Mr. Woodard "passed out" at work, suffered no physical injuries, and completely recovered. CB&I maintains that it provided ample evidence at trial that Mr. Woodard's syncopal episodes could be due to several different co-morbidities, and more likely related to one or more of those conditions, rather than related to one single morning of work.

5

The testimony and evidence in the record indicate that Mr. Woodard suffered dehydration and heat exhaustion while at work for CB&I on May 20, 2017. Mr. Woodard testified that he passed out at work while he was outside shooting a grade and he awoke with his clothes wet with sweat. After he passed out at work, he was taken to the Prime medical facility on site, and then Prime sent him by ambulance to Christus St. Patrick Hospital. The medical records from Christus St. Patrick Hospital on May 20, 2017 confirm a diagnosis of dehydration and heat exhaustion.

Mr. Woodard's primary care physician, Dr. Steven Springer (Dr. Springer), testified that Mr. Woodard suffered heat exhaustion. In addition, Dr. Tony Leung (Dr. Leung), who treats Mr. Woodard for his congenital single kidney, indicated that Mr. Woodard suffered from "frequent job-related dehydration spells." Dr. Springer testified that he agrees with Dr. Leung's evaluation and diagnosis of recent syncopal events likely from dehydration with negative cardiac studies.

A reasonable finding from the testimonies of Mr. Woodard and his treating physicians was that Mr. Woodard was engaged in the business of his employer, shooting a grade, which required him to be outside at the Cameron LNG facility at the time he sustained heat exhaustion. Further, it is reasonable from the record to find that Mr. Woodard's injury was heat exhaustion. All of the medical providers opined that Mr. Woodard had dehydration and heat exhaustion. CB&I offered no evidence to contradict Mr. Woodard's version of events or the diagnosis listed in the medical records. As such, we find no basis to disturb the WCJ's ruling that Mr. Woodard sustained an injury during the course and scope of his employment with CB&I.

**ASSIGNMEMT OF ERROR NUMBER TWO:**

6

In its second assignment of error, CB&I contends that the WCJ committed an error of law, warranting a *de novo review*, in not applying La.R.S. 23:1201 (8)(e), as Mr. Woodard's standard of proof. We find no merit to this assignment of error.

Louisiana Revised Statutes 23:1021 (8)(e) provides:

> Heart-related or perivascular injuries. A heart-related or perivascular injury, illness, or death shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter unless it is demonstrated by clear and convincing evidence that:
>
> (i) The physical work stress was extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation, and
>
> (ii) The physical work stress or exertion, and not some other source of stress or preexisting condition, was the predominant and major cause of the heart-related or perivascular injury, illness, or death.

CB&I argues when an employee seeks to recover workers' compensation benefits for heart related or perivascular injuries, La.R.S. 23:1021 (8)(e) imposes an elevated burden of proof (i.e., clear and convincing) to recover benefits for such injuries. CB&I maintains that Mr. Woodard's medical condition falls under the perivascular and heart-related injury statute, set forth in La. R.S. 23:1021(8)(e). "'[P]erivascular' is defined as "surrounding a blood vessel (artery or vein)." *Charles v. Travelers Ins. Co.*, 615 So.2d 20, 22, (La.App. 3 Cir.) (citing J.E. Schmidt, ATTORNEY'S DICTIONARY OF MEDICINE (1986)), *writ granted and affirmed*, 627 So.2d 1366 (La.1993) In support of its position on appeal, CB&I underscores that at the time of his injury Mr. Woodard was being prescribed Lisinopril, 10 mg to treat his *pre-existing* and *unrelated* Stage 3 chronic kidney disease. In addition, CB&I emphasizes that Mr. Woodard admitted that he was not performing any strenuous activities at the time of the alleged May 20, 2017 incident, nor was he doing any activities outside his normal, everyday job duties.

7

The record reveals that Mr. Woodard is prescribed and takes 10 mg of Lisinopril and has on a daily basis for approximately ten (10) years. In addition, Mr. Woodard worked for CB&I for one (1) year prior to the May 20, 2017 work accident with no issues, with the exception of an episode one (1) year earlier in 2016 when he nearly passed out after getting too hot at work. Moreover, Mr. Woodard's Lisinopril usage is for the preservation of his single kidney, not for high blood pressure or anything heart related or for perivascular injuries.

The record reveals that Mr. Woodard was required by CB&I to obtain clearance from a cardiac standpoint before returning to work. After a battery of tests, Dr. Thomas Mulhearn (Dr. Mulhearn) found nothing wrong with Mr. Woodard's heart and cleared him to return to work without restrictions from a cardiac standpoint. Dr. Mulhearn negated any cardiac issue as the cause of Mr. Woodard's syncopal episodes and attributed the syncope directly to dehydration and heat exhaustion while at work. The medical testimony supports a finding of dehydration and heat exhaustion. Thus, La.R.S. 23:1021(8)(e) does not apply.

Accordingly, we find no error by the WCJ requiring that Mr. Woodard only needed to prove that 1) before the accident, he had not manifested disabling symptoms; 2) commencing with the accident, the disabling symptoms appeared; and 3) there is medical or circumstantial evidence indicating a reasonable possibility of a causal connection between the accident and the activation of the disabling symptoms.

It is undisputed that Mr. Woodard had no disabling symptoms prior to his work accident of May 20, 2017. He worked for CB&I for approximately one (1) year prior to the accident. After he suffered from heat exhaustion at work twice, he was limited to work in climate-controlled environments. The medical evidence confirms a causal connection between his heat exposure at work and his syncopal

8

episodes and accompanying symptoms. The WCJ found a "strong connection" between Mr. Woodard's medical condition and his work conditions. There is a reasonable basis for this finding. Therefore, the presumption of a work accident and resulting disability applies. As such, we find no error in WCJ's failure to apply La.R.S. 23:1021(8)(e).

## ASSIGNMENT OF ERROR NUMBER THREE:

In its third assignment of error, CB&I contends that the WCJ committed manifest error and the decision was clearly wrong in finding that Mr. Woodard is entitled to weekly indemnity benefits in the amount of $657.00 per week from May 20, 2017, until August 22, 2017. We find no merit to this contention.

> Louisiana Revised Statutes 23:1221 provides, in pertinent part: Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
>
> **(1) Temporary total.**
>
> (a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.

CB&I contends that Mr. Woodard was still employed from May 20, 2017, to August 22, 2017, that he was told that he could return to work after he was cleared by his cardiologist, and that when he returned to work on July 25, 2017, and complained of similar symptoms, CB&I referred him back to his medical providers for further evaluation. CB&I maintains that no disability opinion was admitted into evidence at trial for the period of May 20, 2017 to August 22, 2017. CB&I argues that because Mr. Woodard had other options available, such as short-term disability,

FMLA, or other leaves of absence, he is not entitled to an award of Temporary Total Disability (TTD) for this time period.

The record indicates that at the time of Mr. Woodard's heat related illness, he was a full-time employee with CB&I, earning $35.50 per hour, and time and a half for overtime. His average weekly wage was $1,943.63, thereby entitling him to the maximum compensation rate. The records from Prime indicate that Mr. Woodard experienced heat stress with multiple medical co-morbidities. Prime took Mr. Woodard off work until his primary care physician could clear him. On July 21, 2017, Dr. Mulhearn released Mr. Woodard to return to work with no restrictions from a *cardiac* standpoint. When Mr. Woodard returned to work on July 25, 2017, he again suffered heat exhaustion and was taken from work to receive medical attention. At that time, his general practitioner advised him that he would no longer be able to tolerate work in the heat. Dr. Springer testified that Mr. Woodard should avoid working in the sun and heat to avoid any more syncopal episodes. Therefore, Dr. Springer's testimony can reasonably be interpreted that Mr. Woodard's initial injury and removal from work, i.e., heat exhaustion, was present from May 20, 2017, and he could not return to work without some restrictions.

Thereafter, CB&I failed to offer Mr. Woodard a job which fit those restrictions and failed to offer any vocational rehabilitation services to identify suitable employment as mandated by La. R.S. 23:1226. Then, on August 22, 2017, Mr. Woodard began a new job which accommodated his restrictions. Mr. Woodard did not receive any indemnity benefits from CB&I for the weeks of May 20, 2017, to August 22, 2017. Further, a reasonable view of the record shows that he could not have returned to work without accommodations that CB&I could not, or would not, offer. Accordingly, we find no error in WCJ's ruling that Mr. Woodard is

entitled to weekly indemnity benefits in the amount of $657.00 per week from May 20, 2017, until August 22, 2017.

**ASSIGNMENT OF ERROR NUMBER FOUR:**

In its fourth assignment of error, CB&I contends that the WCJ committed manifest error and the decision was clearly wrong in finding that Mr. Woodard is entitled to SEB's for any and all months he is unable to earn 90% of his pre-accident average monthly wage. We find no merit to this contention.

In *Hodges v. Golden Nugget Lake Charles*, *LLC*, 17-936, p. 16 (La.App. 3 Cir. 3/7/18), 242 So.23d 654, 666 (citations omitted), this court noted:

> The supreme court discussed SEBs in *Poissenot v. St. Bernard Parish Sheriff's Office*, 09-2793, pp. 4-5 (La. 1/9/11), 56 So.3d 170, 174 (alterations in original) (footnote omitted), explaining:
>
>> "The purpose of [SEBs] is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident." An employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. "In determining if an injured employee has made out a prima facie case of entitlement to [SEBs], the trial court may and should take into account all those factors which might bear on an employee's ability to earn a wage." It is only when the employee overcomes this initial step that the burden shifts to the employer to prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employee's community or reasonable geographic location.

CB&I argues that Mr. Woodard had "no physical injuries" and his entire SEB claim is based on Dr. Springer's suggestion that he "try to avoid working in the heat." CB&I maintains that Mr. Woodard has no viable SEB claim because his "heat restriction" is due to non-work-related medical conditions and not his employment

11

with CB&I. The argument of CB&I here hinges on the same concept it presented in Assignment of Error Number One, i.e., that Mr. Woodard failed to prove an "injury" in the course and scope of his employment with CB&I. Thus, this argument, again, is without merit.

Further, the record is clear that Mr. Woodard, as a foreman for CB&I, Mr. earned $35.50 per hour and worked 60-70 hours per week prior to the work related injury, and that he was able to find suitable employment with D&G Construction after the injury. D&G accommodated Mr. Woodard's restrictions by allowing him to work in air-conditioned machinery and take "cooling off" breaks when needed, accommodations which were not offered by CB&I. Mr. Woodard testified that he earns $26.00 per hour at D&G and does not usually make 40 hours in a week, due to the weather, slow work, etc. This testimony and Mr. Woodard's payroll records establishes a reasonable basis to find that he is unable to earn wages equal to 90% or more of the wages he earned prior to the work incident with CB&I. As such, we find no error in the WCJ's ruling that Mr. Woodard is entitled to SEB benefits for his failure to earn 90% of more of his wages at the time of his injury.

## ASSIGNMENT OF ERROR NUMBER FIVE:

In its fifth assignment of error, CB&I contends that the WCJ committed manifest error and the decision was clearly wrong in finding that Mr. Woodard is entitled to all medical expenses, including reimbursement of all out-of-pocket expenses incurred to obtain clearance from a cardiologist. We find no merit to this contention.

"Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Foster*,

811 So.2d at 1162 (citations omitted). A preexisting condition does not bar an employee from recovery if it is established that the work-related incident accelerated, aggravated, or, combined with the condition to cause the disability for which compensation is claimed. *Peveto v. WHC Contractors*, 93-1402 (La. 1/14/94), 630 So.2d 689.

In this case, the WCJ found the testimony of Mr. Woodard to be reliable, credible, and consistent. Further, the WCJ found a strong connection between Mr. Woodard's medical condition and the work conditions.

Pursuant to La.R.S. 23:1203(A), the employer shall furnish all necessary medical, surgical, and hospital services, and medicine or any non-medical treatment recognized by the laws of this state as legal.

CB&I argues that Mr. Woodard is not entitled to medical benefits of any kind. CB&I contends that the treatment received by Mr. Woodard is due to pre-existing and unrelated medical conditions and not causally related to his employment. The argument of CB&I again relies on its contention that Mr. Woodard failed to prove an "injury" in the course and scope of his employment. Accordingly, we find no merit to this argument for the reasoning in Assignment of Error Number One.

Further, the record indicates that Mr. Woodard incurred expenses at Christus St. Patrick Hospital for treatment associated with heat exhaustion/dehydration suffered while in the course and scope of his employment with CB&I. These expenses were neither paid nor reimbursed by CB&I. After suffering heat exhaustion while at work on July 25, 2017, Mr. Woodard was transported by ambulance to the hospital. The ambulance charges were incurred by Mr. Woodard. In addition, Mr. Woodard testified that CB&I required further medical examinations before allowing him to return to work. CB&I offered no evidence to the contrary. Mr. Woodard was only examined by a cardiologist at the request of CB&I because

13

he had suffered a work injury. Nevertheless, CB&I failed to pay for the cardiac examinations and testing procedures. Mr. Woodard has maintained from the first incident on May 20, 2017, that his injuries were not related to a cardiac event. Dr. Mulhearn confirmed that Mr. Woodard's syncopal episodes were not cardiac induced.

Given the above and that the record establishes a reasonable basis for the WCJ to find a strong connection between Mr. Woodard's medical condition and the work conditions, we find no error with the WCJ's ruling that Mr. Woodard is entitled to reimbursement of out-of-pocket medical expenses for treatment associated with heat exhaustion/dehydration as well as reimbursement for expenses incurred to obtain clearance from a cardiologist.

## ASSIGNMENTS OF ERROR NUMBER SIX AND SEVEN:

In its sixth assignment of error, CB&I contends that the WCJ committed manifest error and the decision was clearly wrong in finding that Mr. Woodard is entitled to penalties totaling $6,000.00. In its seventh assignment of error, CB&I argues that The WCJ committed manifest error and the decision was clearly wrong in finding that Mr. Woodard is entitled to attorney fees in the amount of $9,500.00. We disagree. We address under one heading these assignments of error, as the analysis of penalties and attorneys fees under the Louisiana Workers' Compensation Act are related.

In *Gradney v. Louisiana Commercial Laundry*, 09-1465, p. 6 (La.App. 3 Cir. 5/12/10), 38 So.3d 1115, 1120 (citations omitted), this court noted:

> Penalties and attorney fees are awarded when an employer or his insurer fails to timely pay benefits owed to an employee, unless the claim for benefits has been reasonably controverted or the nonpayment was a result of conditions over which the employer or his insurer had no control.

An employee's right to benefits will be considered to be reasonably controverted when the employer or his insurer had "sufficient factual information to reasonably counter the factual information presented by the claimant."

CB&I argues that penalties for non-payment of workers' compensation benefits should not be imposed in doubtful cases, where a bona fide dispute exists as to the claimant's entitlement to benefits. CB&I argues that Mr. Woodard is not entitled to a $2,000.00 penalty for CB&I's failure to pay medical benefits, nor is he entitled to the $2,000.00 penalty for CB&I's failure to pay indemnity benefits, nor is he entitled to the $2,000.00 penalty for CB&I's failure to institute vocational rehabilitation service. CB&I further argues that Mr. Woodard is not entitled to attorneys fees.

We have already found that Mr. Woodard proved a work accident, resulting injury, and entitlement to benefits therefor. At the time of the May 20, 2017 work accident, CB&I required Mr. Woodard to report to the emergency room. At that point, CB&I had no reason to doubt Mr. Woodard's injuries were work-related. Thus, the claim was not reasonably controverted. CB&I had a duty to pay or reimburse Mr. Woodard's medical expenses but failed to do so. Furthermore, once Mr. Woodard was restricted from his employment, CB&I had a duty to either pay SEB to Mr. Woodard or to initiate vocational rehabilitation services. It did neither. An employee's right to benefits will be considered to be reasonably controverted when the employer or his insurer had "sufficient factual information to reasonably counter the factual information presented by the claimant." *Thibodeaux v. L.S. Womack, Inc.*, 94-1375, p. 2 (La.App. 3 Cir. 4/5/95), 653 So.2d 123, 125. CB&I has not offered an argument setting forth any factual information that might suggest that Mr. Woodard's right to benefits has been reasonably controverted. Instead, it only

15

argues that the evidence does not justify an award of penalties and attorneys fees. As such, we agree with the WCJ's imposition of penalties and attorneys fees.

## CONCLUSION:

Chicago Bridge & Iron asserts seven assignments of error alleging error in the WCJ's judgment finding that Mr. Woodard's heat exhaustion and resulting limitations were compensable under workers' compensation, and that Chicago Bridge & Iron was arbitrary and capricious in handling Mr. Woodard's claim. We find no merit to any of these assignments of error. Accordingly, we affirm the WCJ's judgment. Costs of these proceedings are assessed to Chicago Bridge & Iron.

**AFFIRMED.**